## 7232

### ROWELL v. ADAMS.

ADMINISTRATION—WAIVER—REVOCATION.—Where a brother of a deceased partner of a mercantile partnership delivers to the surviving partner a renunciation in writing of his right to administer on his brother's estate, and the surviving partner does no act thereunder toward securing administration, the brother may administer, as his renunciation is revoked before action on by application for administration.

Before HYDRICK, J., Colleton, May, 1908.    Affirmed.

Action by J. H. Rowell against C. D. C. Adams.    The Circuit decree is:

"This is an appeal from the probate court.    The grounds of appeal are numerous, but it will not be necessary to pass upon them *seriatim,* as they involve only two questions, one of law and one of fact, which will be stated presently.

"In 1905 C. T. Rowell, late of the said county, being then in copartnership with the respondent, C. D. C. Adams, in a mercantile business, under the firm name of Rowell & Adams, died intestate, leaving as his only heirs at law his brother, the petitioner, and a sister, since deceased.

"Soon after the death of C. T. Rowell the respondent claims that the petitioner gave him a paper, of which the following is a copy:

" 'I hereby authorize and empower C. D. C. Adams to look after and control my interest in the estate of my brother, C. T. Rowell, deceased, to do any and all acts necessary to carry on the mercantile business which has been run heretofore as Rowell & Adams.    I also waive my right to administer on the estate of my said brother, and request Mr. C. D. C. Adams to administer on same.'

"The respondent relies upon this paper in resistance to the petitioner's right to the administration of his brother's estate, to which he is unquestionably entitled, unless this

paper is genuine and estops him from now claiming that right.

"The petitioner denies that he ever gave the respondent the paper in question, and denies that he signed it, or authorized any one to sign it for him. The paper is without date, and there is no witness to it. There is no testimony that the signature thereto is the signature of the petitioner. On the contrary, the petitioner swears that it is not his signature, and his signature to the original petition in this case, and his signature made at the trial for the purpose of comparison satisfy me that the signature to the paper in question is not the signature of the petitioner. But the respondent says that he carried the paper to the petitioner at his home and requested him to sign it; that he took it into the house and brought it back, saying that it was signed all right. On cross-examination he said that when he went to the petitioner's house there was no one there, so far as he knew, other than the petitioner and his wife. The respondent does not undertake to prove that the signature is in the handwriting of the petitioner himself, or of his wife, or any member of his family, or in fact of any other person, but relies upon the fact that the petitioner gave it to him, saying that it had been signed. On the contrary, the petitioner swears that it is not the handwriting of his wife or any member of his family. The witness, Patrick, corroborates this testimony. The burden was upon the respondent to prove the execution of the paper. I do not think it necessary for him to prove that it was signed by the petitioner himself, for the signing by any other person, authorized by the respondent, saying that it had been signed all right, was sufficient to make the paper valid. Upon that issue the probate judge refused to allow the petitioner to testify in reply, and while I think he erred in doing so, still I do not think the error material, for the petitioner had already testified that he never saw the paper before, and that Adams had never come to his house to get him to sign any paper.

But, strictly speaking, it was competent in reply, because there had not been any circumstances in detail given, as to time and persons present, until Adams testified, and, after hearing these, it was competent for the petitioner again to deny the facts testified to by Adams in connection with them. But, as above stated, I do not think that very material, and, upon that alone I would not disturb the finding of the probate court as to the fact that 'he either signed it himself or had some one else to sign it for him by his direction.' But the whole proceeding satisfies me that the probate judge had very little patience with petitioner's claim, and he undertakes to sustain his decision as to facts as to which there is absolutely no testimony; for instance, he says: 'Acting upon the good faith of Rowell in executing this instrument of writing Adams has continued to conduct the mercantile business.' I have searched the record in vain to find any testimony that Adams acted on that instrument in continuing the business. Adams himself does not say so. In fact Adams had the legal right, as survivor of the firm, without any authority from the petitioner, to carry on the business. As the probate judge knows the parties and I do not, and therefore he knows probably better than I do the credit that should be given to the testimony, I should, but for the circumstances above mentioned, be strongly inclined to sustain his finding of fact above quoted as to the execution of the paper in question. However, I do not consider that a material matter, because even if the genuineness of the paper were admitted, I think, nevertheless, the probate judge erred in granting the letters to the respondent.

"If the paper had been acted upon by Adams and letters had been granted to him, or even if he had gone so far as to do anything toward getting letters, I should say that such a paper would be an estoppel.

"But for three years Adams did nothing, and so far as the testimony shows did nothing until after the petitioner

had filed his petition herein, which would have been a retraction, even if the paper had been executed by him.

"The authorities agree that such a waiver may be retracted at any time before it has been acted upon.    11 A. & E. Ency. L., 757, 785.    Moreover, it appears that practically the only purpose of an administration is to have the respondent account for the interest of Rowell in the business of Rowell & Adams.    He denies that Rowell had any interest in that business.    Can he, as administrator, sue himself individually?  'A surviving partner of a decedent, as a general rule, cannot be appointed administrator of the estate.'    11 A. & E. Ency. L., 782.    So one interested against the heirs or the estate ought not to be appointed. 11 A. & E. Ency. L., 781.

"It is, therefore, ordered, adjudged and decreed that the judgment of the probate court be reversed, and that the grant of letters of administration upon the estate of C. T. Rowell, deceased, to the respondent, C. D. C. Adams. be vacated and set aside, and that the case be remanded to the probate court, with instructions to grant such letters to the petitioner."

From this decree the respondent appeals.

*Messrs. Howell & Gruber,* appellant.    Oral argument.

*Mr. J. S. Griffin,* contra, cites: Code, 1902, 2512; Strob. L., 337; 28 S. C., 201.

July 13, 1909.    The opinion of the Court was delivered by

MR. JUSTICE GARY.    The decree of the Circuit Court is affirmed, for the reasons therein stated.